IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00862-DDD-SKC

MICHAEL LAWRENCE,

     Plaintiff,

v.

THE STATE OF COLORADO;
JARED POLIS, Governor of the State of Colorado;
COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT;
Denver Mayor MICHAEL HANCOCK; and,
THE DENVER DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,

     Defendants.

---

## COLORADO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Defendants State of Colorado, Governor Jared Polis, and the Colorado Department of Public Health and Environment, by and through their undersigned attorneys, move under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss all claims against them in the First Amended Complaint, and state the following in support of this motion:

## INTRODUCTION

Plaintiff, Michael Lawrence, in his First Amended Complaint, seeks monetary damages for losses resulting from Defendants' orders and measures taken to mitigate public health dangers due to the current pandemic COVID-19 disease. Formerly, Mr. Lawrence sought injunctive relief against enforcement of emergency orders, including orders that required closure of certain businesses

like the restaurant where he was employed, bars, and gymnasiums, and prohib-
iting public gatherings in excess of 50 persons, later reduced to 10 persons.  Mr.
Lawrence also sought to enjoin state-wide stay-at-home orders issued by the
Governor.  He was denied a preliminary injunction by this Court's "Order Deny-
ing Plaintiff's Request for Preliminary Injunction." Doc. #19.  He then amended
his Complaint to seek exclusively monetary damages.  Doc. # 23.

Plaintiff's First Amended Complaint centers on the state and local stay-at-
home orders and accompanying public health orders entered in March 2020.  All
these orders have since expired and have been replaced by less restrictive or-
ders, largely due to the success of social distancing and stay-at-home orders.

## PLAINTIFF'S CLAIMS

Mr. Lawrence now seeks money damages "for his economic losses," and he
seeks punitive damages also "as a penalty for taking away [his] constitutional
rights."  First Amended Complaint, *ad damnum*, p. 23.  His claims for violations
of his rights guaranteed by federal law and for "takings" are brought under 42
U.S.C. § 1983.  First Amended Complaint, ¶¶ 23 – 25.  He also brings claims for
money damages under the Colorado Constitution, *id.*, ¶ 25(d), ¶¶ 54 – 64, 65 –
69, and for alleged violations of certain state statutes, *id.*, ¶¶ 70 – 83, 84 – 87.
Mr. Lawrence alleges violations of the Denver Municipal Code, *id.*, ¶¶ 88 – 100,

but it is not clear that such claims are asserted against the State, CDPHE, and Governor Polis.

Mr. Lawrence does not specify the capacity or capacities in which he now sues Governor Polis, but, in his First Amended Complaint, Mr. Lawrence has not amended his allegations of the identity and capacity of the Governor in paragraph 5. Thus, he apparently continues to sue Governor Polis in his official capacity, as he did necessarily in his original complaint for injunctive relief. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (to determine whether the suit is official or personal, courts look to the course of proceedings).

## ARGUMENT

I. **The Eleventh Amendment bars claims against the State, its agencies, and the Governor in his official capacity.**

A. **Standard for deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(1).**

Defendants State of Colorado, Governor Polis in his official capacity, and CDPHE move to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and the Eleventh Amendment to the United States Constitution. "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter of the district court, the issue must be resolved before a court may address the merits of

the underlying claim." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1259

(10th Cir. 2002).

> **B.   The State of Colorado, its Department of Public Health and Environment, and Governor Polis in his official capacity may not be sued for damages in federal court.**

The Amended Complaint seeks only money damages; it does not seek a

prospective injunction or other equitable relief.  The State of Colorado has not

consented to suit in federal court.  Without consent, the Eleventh Amendment to

the United States Constitution, or the "presupposition of our constitutional

structure which it confirms," bars federal courts from hearing claims against

nonconsenting States and their agencies, except under two conditions not pre-

sent here.  *Allen v. Cooper*, __U.S.__, 140 S.Ct. 994, 1000 (2020); *Ellis v. Univ. of*

*Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).

Because Colorado, its agency CDPHE, and Governor Polis in his official

capacity have sovereign immunity from suit in this Court, all claims against

them must be dismissed under Fed.R.Civ.P. 12(b)(1).

## II.     The First Amended Complaint fails to state a claim on which relief can be granted.

### A.     Standard for deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quotations omitted).

### B.     The State of Colorado, its Department of Public Health and Environment, and Governor Polis in his official capacity are not "persons" within the meaning of 42 U.S.C. § 1983.

Claims may not be asserted under section 1983 against the State, its agency, CDPHE, or against the Governor in his official capacity because they are not "persons" within the meaning of the federal civil rights laws.  For purposes of § 1983, a State is not a "person," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989), and section 1983 creates no remedy against a State.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).  State agencies also are not "persons" for purposes of section 1983.  *See Puerto Rico Aqueduct & Sewer* Auth.,

506 U.S. at 144.  Neither are state officials in their official capacities, because the suit is against the official's "office" and so is "no different from a suit against the state itself."  *Will*, 491 U.S. at 71.

### C.   Orders issued by Governor Polis did not violate constitutional rights of Mr. Lawrence.

More than a century ago, the United States Supreme Court upheld exercises of the states' general police powers to protect public health through quarantines and other measures.  *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905).  In rejecting a claim that a compulsory vaccination law violated the defendant's rights under the Fourteenth Amendment, the Court emphasized that "the liberty secured by the Constitution … does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint."  *Id*. at 26.  Instead, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."  *Id*. at 27.

*Jacobson* established a framework under which public health orders are reviewed.  The rule permits judicial review only "if a statute purporting to have been enacted to protect the public health … has no real or substantial relation to

those objects, or is, beyond all question, a plain, palpable invasion of rights se-
cured by the fundamental law." *Id*. at 31. Because Mr. Lawrence's claims fail to
meet either prong of this framework, his claims should be dismissed.

### 1.    Right to travel.

For his First Claim for Relief, Mr. Lawrence contends that he has been de-
prived of his right to travel without due process of law.  The alleged violation of
Mr. Lawrence's right to travel is assumed to result from stay-at-home orders is-
sued by Governor Polis, but their means of infringement on Mr. Lawrence's right
to travel is not alleged.  The stay-at-home orders did not forbid leaving home,
but their directives were expressly limited to remain home "whenever possible."
D 2020-017, p. 1; PHO 20-24.

Exceptions were also made expressly exempting certain classes of travel
from stay-at-home orders, and the orders really amount only to pleas to refrain
from *unnecessary* travel.  *Id*.  Mr. Lawrence does not allege that he actually has
been prevented from exercising his right to travel or that any threat of enforce-
ment of a travel ban was made.  He does not allege that roadblocks were erected
or that drivers were stopped to display proof of allowed travel.  Mr. Lawrence
does not allege that the Governor closed airports or grounded flights, and air
travel has continued throughout the current pandemic, albeit with far fewer

travelers willing to board aircraft.  Mr. Lawrence does not allege, and cannot allege, that *any* traveler, much less himself, has been prevented from exercising a right to travel.

Mr. Lawrence alleges that his federally protected right to travel includes a right to *intrastate* travel, for which he cites the case of *Kent v. Dulles*, 357 U.S. 116, 127 (1958).  First Amended Complaint, doc. # 23, ¶ 31; *see also id.*, ¶ 46. *Kent* did not rule that intrastate travel was a federally protected right. It said only that travel inside frontiers was a part of our heritage.  There is no federally protected right to *intrastate* travel.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (a purely intrastate restriction does not implicate the right of interstate travel); *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (rights at issue apply only to *interstate* travel, and travel claimed to be restricted was *intrastate* travel).  Mr. Lawrence cannot show that any right to travel was substantially burdened, and his claim premised on a violation of his fundamental right to travel must be dismissed.

### 2.   Substantive due process.

In his Second Claim for Relief Mr. Lawrence alleges a violation of his substantive due process rights under the Fourteenth Amendment, Doc. # 23, ¶ 37, but, other than loss of employment "at his employer's business," *id.*, ¶ 38, he does not allege that he actually was deprived of property or liberty.  *See id.*,

8

¶ 25(b) (order to close "non-essential" businesses resulting in loss of employment constitutes a "regulatory taking of private property").  He complains of vague deprivations of property and liberty interests, including infringement of "personal" and "intimate" choices and of "the right of every individual to the possession and control of his own person." *Id.*, ¶ 37.  Mr. Lawrence contends, "at a minimum … he should have been able to decide for himself whether to stay away from work." *Id.*, ¶ 38.

Allegations in the First Amended Complaint fall woefully short of what is necessary to state a substantive due process violation through executive abuse of power.  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  "In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.*, at 847 n. 8.  "Only if the necessary condition of egregious behavior were satisfied would there be a possibility of recognizing a substantive due process right to be free of such executive action." *Id.*

The First Amended Complaint does not allege such egregious, outrageous, conscience shocking behavior by Governor Polis.  Mr. Lawrence alleges no more than negligence, or "overreach," *id.*, ¶ 22, of the Governor in overestimating the seriousness of the COVID-19 pandemic and perhaps in underestimating disparate and deleterious effects of Colorado's emergency response.  "The Constitution

does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cty. of Sacramento*, at 849.

If executive action taken by Governor Polis in response to the pandemic resulted in unlawfully disparate treatment of similarly situated persons through orders closing non-essential businesses while "essential businesses" were allowed to remain open, then the more appropriate remedy, rather than substantive due process, comes under equal protection analysis. *See id.*, at 842.

### 3.    Equal Protection.

Plaintiff alleges an Equal Protection violation because he alleges the unidentified restaurant where he works closed as a result of the Governor's orders while other businesses have remained open. Plaintiff's Equal Protection Claim fails for three reasons.

*First*, he lacks standing to assert an Equal Protection claim because he cannot show that the closure of his place of employment was caused by the State Defendants' orders. *See, e.g., WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) ("a causal connection between the injury and the challenged action" is required for standing). Plaintiff alleges he was employed at a restaurant, and asserts that the Defendants ordered it to be shut down. Am. Compl. ¶¶ 52-53. But the relevant executive and public health orders

defined restaurants as "critical businesses" and permitted them to continue to operate on a carryout and delivery basis. *See* PHO 20-24 at 8; PHO 20-22 (II)(A)(1). Other than his false assertion that Defendants "mandated" the closure of Plaintiff's unidentified place of business, Plaintiff has not made any non-conclusory allegation that the closure of Plaintiff's restaurant was caused by the Defendants' orders rather than the effects of the global pandemic. Therefore, Plaintiff does not have standing to assert his Equal Protection claim. *Accord* doc #19 at 14 ("Because the injuries to Mr. Lawrence's religious exercise were not caused by the orders he challenges, and would not be redressed by the injunction he seeks, the Court cannot resolve his free exercise claim.").

*Second*, Plaintiff cannot assert an injury on behalf of his unidentified employer. "The prudential standing doctrine … prohibit[s] a litigant's raising another person's legal rights." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quotations omitted). Here, Plaintiff merely argues that orders targeted his employer. *E.g.* Am. Compl. ¶ 44 (alleging the Defendants drew "arbitrary distinctions *between businesses*") (emphasis added). Therefore, Plaintiff cannot raise his employer's legal rights.

*Third*, even if Plaintiff can assert his employer's right to equal protection under the law, that right has not been violated here. Rational basis applies to Equal Protection claims that do not implicate a suspect class or fundamental

11

right.  *See, e.g.*, *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).  Plaintiff does not allege that a suspect class is involved, and rights he claims were abridged are his own (the right to travel and substantive due process) rather than his employer's.  As explained above, these rights were not violated.  Accordingly, the questioned Orders need only be rationally related to a legitimate government purpose.

There can be no question that the State's interest here is compelling.  *See* doc #19 at 20 ("The State and City have a compelling interest in maintaining the health and safety of their residents . . ..").  And the prohibition on in-person dining during the pandemic, intended to promote social distancing and prevent large gatherings indoors where the virus is most likely to spread, is rationally related to that interest.  Therefore, if the Court reaches the merits of Plaintiff's Equal Protection claim, that claim should be dismissed under a rational basis analysis.

### 4.    Takings.

Plaintiff's Fourth Claim for Relief alleges a violation of the Taking Clause under the Fifth Amendment. As explained above, Plaintiff lacks both Article III

and prudential standing to bring this claim on behalf of his employer. In any event, the claim still lacks merit.

Generally, the exercise of a state's police power does not constitute a taking. *See Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) ("[W]hen the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."). The Supreme Court has applied the principle underlying *Jacobson* to taking claims. *United States v. Caltex*, 344 U.S. 149 (1952), is instructive. There, the army destroyed oil companies' terminal facilities to deprive the Japanese of a "valuable logistic weapon" as they advanced following the attack on Pearl Harbor. *Id*. at 151. The Supreme Court held that the companies were not entitled to compensation, noting that "the common law had long recognized that in times of imminent peril—such as when fire threatened a whole community— the sovereign could, with immunity, destroy the property of a few that the property of many and the lives of many more could be saved." *Id*. at 154.

There is no question that the pandemic has made this a "time[ ] of imminent peril." *Caltex*, 344 U.S. at 154. The Supreme Court has made clear that the State Defendants have the authority to take action to protect the people of Colorado from that peril without incurring constitutional taking liability. *See, e.g.*,

13

*In re Abbott*, 954 F.3d at 784 (citing *Caltex* as an example of the *Jacobson* principle in the context of this pandemic).  The Supreme Court has long held that "the mere fact that … regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation." *United States v. Cent. Eureka Mining Co.*, 357 U.S. 155, 168 (1958).  In the emergency context, the Court has "been reluctant to find that degree of regulation which, without saying so, requires compensation to be paid for resulting losses of income." *Id*. (in context of war).  Responding to an emergency of this scope "demands the strict regulation of nearly all resources" and makes "demands which otherwise would be insufferable."  "But … economic restrictions, temporary in character, are insignificant when compared to the widespread uncompensated loss of life and freedom of action which" accompany this pandemic. *Id*.

Even if Plaintiff's suggestion that the current pandemic is not an emergency is correct, his claim still fails. As explained above, the PHOs permitted restaurants to continue operating as "critical businesses," so the State Defendants did not require Plaintiff's employer "to shut down and cease all operations."

Doc. # 23, ¶ 53.  His employer's voluntary closure therefore cannot constitute a taking.

Plaintiff's claim should be dismissed because a partial and temporary restriction on his employer's business does not constitute a taking.  *See, e.g., Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017) (holding that a categorical taking occurs only where a regulation "denies all economically beneficial or productive use of land"); *see also Friends of DeVito v. Wolf*, __ A.3d __, 2020 WL 1847100, at *15–17 (Pa. Apr. 13, 2020) (rejecting takings challenge to Pennsylvania's Executive Order issued in response to this pandemic).[1]

## 5.    Right to Liberty, Colo. Const. Art II, § 3.

Plaintiff seeks damages for an alleged violation of his rights under the Colorado Constitution.  But Colorado courts have refused to imply a private right action for damages for violations of the Colorado Constitution "where other

---

[1] Mr. Lawrence makes a Sixth Claim for Relief, asserting a "takings" claim under the Colorado Constitution and laws.  Doc. 23, ¶¶ 65 – 69.  Such "takings" claim is subject to similar deficiencies stated above respecting his Fourth Claim for Relief.  Mr. Lawrence lacks standing to make a claim for a "taking" of his employer's restaurant.  Also, emergency orders in the pandemic were made as an exercise of police powers, not powers of eminent domain.  *See Animas Valley Sand & Gravel, Inc. v. Bd. Of Cnty. Comm'rs of La Plata Cnty.*, 38 P.3d 59, 64 (Colo. 2001) ("[T]his court has interpreted the Colorado takings clause as consistent with the federal clause," other than for one "specific additional coverage" not at issue here.).

adequate remedies exist." *See Bd. Of County Comm'rs of Douglas Cnty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996); *see also Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F. Supp. 2d 1297, 1304 (D. Colo. 1998) ("No statutory equivalent [to § 1983] exists under Colorado state law to enforce the state constitution."). Here, Plaintiff has asserted several claims under Section 1983 and the Takings Clauses of the state and federal constitutions for his alleged injuries, which provide more than adequate alternate remedies for his alleged harms. There is thus no basis for implying a right of action under the Colorado Constitution. The Fifth Claim for Relief should be dismissed.

> **6.    For the Sixth Claim for Relief, please see fn. 1, above.**
>
> **7.    Violation of the Colorado Disaster Emergency Act.**

Plaintiff's Seventh Claim for Relief alleges a violation of the Colorado Disaster Emergency Act, § 24-33.5-701 *et seq.*, but that statute does not create a private right of action for damages. The purpose of the statute is to enable the governor to respond quickly and decisively to emergencies. Nothing in the statute states that it creates a private right of action, and no court has addressed the question.

"When a statute does not expressly provide for a private civil remedy, a court must consider three factors" to determine whether such a remedy exists:

(1) whether the plaintiff is within the class of persons intended to benefit from the legislation; (2) whether the legislature intended to create a private right of action; and (3) whether an "implied civil remedy would be consistent with the purposes of the legislative scheme." *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997) (quotations omitted). The "critical question is whether the legislature intended" to create a private remedy, and so courts will "not infer a private right of action based on a statutory violation unless [the court] discern[]s a clear legislative intent to create such a cause of action." *Id.*

Here, there can be no doubt that the legislature did not intend to create a private cause of action. While the Act exists to protect all the people of Colorado during times of emergencies, *see* § 24-33.5-702(1)(a), arguably making Plaintiff a member of the group intended to benefit from the statute, the legislature did not intend to create a private right of action. The CDEA is intended to "strengthen the role[] of the governor" in responding to emergencies and to coordinate "activities relating to disaster prevention, preparedness, response, and recovery." § 24-33.5-702(1)(d),(f). An implied right of action for damages would be contrary to the legislative intent of providing for quick and decisive responses to disasters. *See, e.g.*, § 24-33.5-702(2)(d) ("Nothing in this part 7 shall be construed to . . . limit, modify, or abridge . . . any . . . powers vested in the governor" under state

17

law.). The only place the statute even discusses liability is in the context of "compensation for services or for the taking or use of property." § 24-33.5-711(1). The statute did not create any other form of civil liability for the Governor. Therefore, this claim must be dismissed.

### 8.   Powers and duties of CDPHE.

Plaintiff's Eighth Claim for Relief must also be dismissed because Colo. Rev. Stat. § 25-1.5-101 does not create a private right of action. Specifically, Plaintiff alleges a violation of Colo. Rev. Stat. § 25-1.5-101(1)(a), which authorizes and obligates CDPHE "to close theaters, schools, and other public places, and to forbid gatherings of people when necessary to protect the public health."

Here, the legislature did not intend to create a private right of action, nor did it intend to create a private remedy.  The legislature delegated to CDPHE the power and duty to investigate and control the spread of disease during an emergency epidemic. *See* Colo. Rev. Stat. § 25-1.5-102(1). Permitting a private cause of action to second-guess CDPHE's emergency action, or to permit damages, would frustrate the legislature's intent and undermine CDPHE's ability to fulfill it's public-health function.  *See also Coppinger v. Shoemaker*, 11-CV-01741-REB-KLM, 2012 WL 1047567, at *9 (D. Colo. Feb. 21, 2012), *report and recommendation adopted,* 11-CV-01741-REB-KLM, 2012 WL 1046011 (D. Colo. Mar. 28, 2012) (determining that Colo. Rev. Stat. § 25-1.5-102 does not provide a

private right of action).  Because the statute did not create a private right of action, implied or otherwise, this claim must be dismissed.

## CONCLUSION

Defendants State of Colorado, its agency CDPHE, and Governor Jared Polis request this Court to dismiss claims against them in the First Amended Complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

RESPECTFULLY SUBMITTED this 2nd day of June 2020.

PHILIP J. WEISER
Attorney General

s/ Michael D. McMaster
**Friedrick C. Haines\***
Senior Litigation Counsel and Assistant
  Solicitor General
**Michael D. McMaster\***
Assistant Solicitor General
1300 Broadway, 10th Floor
Denver, CO  80203
Telephone: (720) 508-6552 / 6484
Email:  fred.haines@coag.gov
michael.mcmaster@coag.gov
Attorney for State Defendants
\*Counsel of Record

I hereby certify that the foregoing motion to dismiss complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing Motion to Dismiss upon all parties herein by e-filing with the CM/ECF system maintained by the court, this 2nd day of June 2020, addressed as follows:

Michael Lawrence
8330 E. Quincy Ave., Apt H209
Denver, CO 80237
mlawrencellc@msn.com

Wendy Shea
Conor Farley
David Cooperstein
201 West Colfax Avenue
Denver, CO 80202
wendy.shea@denvergov.org
conor.farley@denvergov.org
david.cooperstein@denvergov.org

s/ Leslie Bostwick