IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Division
Case No. 1:20-cv-862

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2021 JAN -8 PM 4: 31

JEFFREY P. COLWELL
CLERK

BY_____ DEP. CLK

MICHAEL LAWRENCE,

    Plaintiff,

v.

JARED POLIS, GOVERNOR OF THE STATE OF COLORADO, in his individual capacity;
JILL RYAN, EXECUTIVE DIRECTOR OF THE COLORADO DEPT. OF
PUBLIC HEALTH AND ENVIRONMENT, in her individual capacity; BOB MCDONALD,
EXECUTIVE DIRECTOR OF THE DENVER DEPT. OF PUBLIC HEALTH AND
ENVIRONMENT, in his individual capacity; and DENVER MAYOR MICHAEL
HANCOCK, in his individual capacity,

    Defendants.

---

### MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FRCP 60(b)(2)

---

The plaintiff, pro se, pursuant to F.R.C.P. 60(b)(2) and F.R.C.P. 12(b)(6), hereby moves the Court for relief from its December 4, 2020 order of judgment in favor of the defendants. In support thereof, the plaintiff states as follows.

1. WHERE A COMPLAINT MAY BE AMENDED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, AMENDMENT OF THE COMPLAINT IS PROPER; DISMISSAL IS NOT

When a defendant files a motion under F.R.C.P. 12(b)(6) and there is a possibility the plaintiff can remedy a defect in the complaint with an amended complaint that provides an adequate statement of claims, the proper relief is to allow the plaintiff to amend his complaint. Summers v. Texas de Brazil (Denver) Corp., 2011 WL 1832334, p.6 (D.Colo. 2011). There is no

1

exception provided where, as here, the case has been dismissed. Rule 60 expressly provides a mechanism for relief from judgment, and along with the Rule 12 preference for amendment rather than dismissal of a complaint, the two rules make it clear that even now, because amendment of the complaint will allow for the setting forth of cognizable claims, amendment should be permitted and dismissal should be set aside.

## 2. SINCE THE FILING OF THE SAC, THE DEFENDANTS HAVE VIOLATED THE PLAINTIFF'S RIGHT TO THE FREE EXERCISE OF RELIGION, MAKING DISMISSAL IMPROPER

The defendants have made new incursions on the plaintiff's First Amendment right to the free exercise of religion. These new facts have occurred since the filing of the Second Amended Complaint, making it impossible for the plaintiff to have included them in the SAC.

The defendants' recent infringement of the plaintiff's right to the free exercise of religion provides standing to the plaintiff, making the Court's dismissal of this case improper. This Court has already recognized the plaintiff's standing to make such a claim, as the Court showed in its review of this claim in its April 26, 2020 Order. The defendants' executive orders have prevented the plaintiff on many occasions from attending Mass and confession, as the plaintiff describes <u>infra</u>.

Pursuant to F.R.C.P. 60(b)(2), relief from judgment is proper when newly discovered evidence supports relief from judgment. In this case, the state defendants' restrictions on church attendance have resulted in a restriction of the plaintiff's ability to attend Mass or confession.

Since the filing of the SAC, the state defendants have issued and enforced executive orders restricting the number of people who could attend Mass at any given service. Those

restrictions were both numeric and based on a percentage of normally maximum occupancy. In response to these restrictions, the plaintiff's parish instituted a registration process.

The parishioners have been and remain obligated to register on Wednesdays for Mass on Sunday. If one is not in time to register (and registration fills quickly), then one may not attend Mass that Sunday. Ushers at the parish confirm a person's registration and reject people who have not registered to attend, in order to comply with the defendants' church attendance rules.

On or about Friday, November 20, 2020, the defendant governor moved the Denver metro counties to a red level of restrictions. That change included an even stricter numeric limit on church attendance than had been in effect before. In response, the plaintiff's parish further reduced the number of people who were allowed to register for each Mass. As a result of this reduction, the plaintiff has not been able to attend Mass since November 15, 2020, except for December 13, 2020.

As the plaintiff discovered on November 22, 2020, he was not even allowed to go to confession before Mass (because of failure to register in time), even upon explaining to the usher he would not seek to attend the Mass itself. Since the filing of the Second Amended Complaint, the defendants have placed obstacles before the plaintiff from attending Mass and confession, in violation of the First Amendment.

The defendants' conduct infringes on the plaintiff's right to the free exercise of religion. This harm is a significant and irremediable harm that the Court should address immediately. The complained-of conduct has occurred since the filing of the Second Amended Complaint, making amendment of the complaint proper and dismissal (based on the old facts) improper.

Today, the defendants cannot treat church attendance less favorably than similar non-church activities. This prohibition exists because this Court barred such conduct in its October 15, 2020 Order in <u>Denver Bible Church v. Azar</u>. The defendants continue, however, to limit church attendance, as they did in the governor's imposition of a red threat level in November.

On December 15, 2020, the U.S. Supreme Court weighed in on the defendants' attempts to restrict church attendance. In <u>High Plains Harvest Church v. Polis</u>, 592 U.S. ___ (2020) (Case No. 20A105), Justice Gorsuch granted the plaintiff church's request for injunctive relief in the form of banning the defendant governor from continuing to limit church attendance by percentage or a hard numeric cap. In reaching this conclusion, Justice Gorsuch followed the Court's reasoning in <u>Roman Catholic Diocese of Brooklyn v. Cuomo</u>, 592 U.S. ___ (2020) in determining that numeric limitations on church attendance in response to covid-19 violated church-goers' First Amendment right to the free exercise of religion.

There remains, however, a restriction on church attendance: the defendants continue to insist on social distancing in church. This imposition significantly reduces the number of people at the plaintiff's parish who can attend Mass. When there was no rule requiring social distancing, the plaintiff's parish was completely full for most Masses. Now that the defendants have imposed a social distancing rule, the sanctuary can be no more than about 75% full.

Additionally, the defendants continue to insist on the wearing of masks at Mass. There is no legal basis for the defendants' restrictions. There is no basis for the government to interfere with church at all. The plaintiff has sought this finding from the Court throughout this case and the plaintiff continues to seek the Court's conclusion on that point. The law entitles the plaintiff to do so. The First Amendment entitles the plaintiff to seek the relief he seeks herein.

The plaintiff will file a motion to amend his complaint to include allegations of the defendants' post-SAC conduct that has infringed on the plaintiff's right to the free exercise of religion. The prospective motion to amend will conform to the Court's rulings regarding this Motion.

3. THE PLAINTIFF HAS STANDING BECAUSE THE DEFENDANTS CAUSED THE PLAINTIFF'S ECONOMIC DAMAGES; THE PLAINTIFF ASSERTED THIS AS A FACT IN THE SAC, AND THIS ASSERTION MUST BE ACCEPTED AS TRUE

In the Court's December 4, 2020 Order dismissing this case, the Court erroneously concluded the plaintiff lacked standing because he could show no damage to a legally cognizable interest. In fact, the plaintiff asserted in the SAC that the defendants had caused his economic damages. In the SAC, at para. 22, the plaintiff asserted: "[t]he defendants' executive orders continue to restrict the operation of the plaintiff's place of work so heavily that the plaintiff's place of work continues to remain closed <u>because it cannot operate profitably under the defendants' orders</u>" (emphasis added). This is an assertion of fact as to causation. It is similar to asserting the fact that the assassination of Archduke Ferdinand by Gavrilo Princip started WWI.

The factual allegations of a complaint must be taken as true on a motion to dismiss under F.R.C.P. 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This is black-letter law and there is no dispute about it. The Court cited this very rule in its Order dismissing this case. December 4, 2020 Order, pp. 7-8. While the plaintiff asserted as fact that the defendants' executive orders were the cause of the plaintiff's loss of employment, the Court seems to have ignored this assertion of fact.

The Court had to ignore the factual assertions of the SAC in order to dismiss this case for lack of standing. This dismissal is an improper denial of the plaintiff's fundamental

5

constitutional right to a trial by jury. The Court does not have jurisdiction to ignore the due process protections given to litigants by the Constitution. The Court's dismissal wrongly denies the plaintiff the right to litigate his claims on their merits.

The plaintiff identified the defendants' executive orders as the cause of his dismissal from work because the chef at the plaintiff's former employer identified that as the cause of his dismissal. The chef was responsible for preparing the profit and loss calculations of the kitchen on a monthly basis. It is reasonable to assume he understood the economics of running that kitchen. When he told the plaintiff the defendants' executive orders were the cause of the plaintiff's dismissal, the chef was speaking on a subject which he understood. The plaintiff independently affirmed the chef's conclusions as to the cause of the restaurant shutdown. On that basis, the plaintiff made the assertion he did in paragraph 22 of the SAC. That assertion of fact must be accepted as true for purposes of a Rule 12(b)(6) motion. Taken as true, the defendants' actions caused the plaintiff's economic damages and thus the plaintiff has standing.

This Court relied on a Florida case to conclude the plaintiff's employer closed as a matter of choice, thereby breaking the chain of causation. December 4, 2020 Order, p. 21, relying on Henry v. DeSantis, 461 F.Supp. 3d 1244, 1252-53 (S.D. Fla. 2020). The Florida court erred. The Florida court showed no understanding of how business actually operates.

The plaintiff's former employer had no choice in closing down in response to the defendants' executive orders. The executive orders at issue killed off about 95% of the restaurant's business. A reasonable person, familiar with the way businesses operate, understands that a business that has lost 95% of its revenue cannot continue to staff itself as it did before the

loss. This choice is no choice. The plaintiff's former employer shut down out of necessity and not choice. In concluding otherwise, the Florida court showed its unfamiliarity with business.

The plaintiff's former employer closed out of necessity because staying open and losing thousands of dollars a day by retaining its normal level of employees was never an option. The analog in terms of natural persons (as analogous to corporations) is to characterize it as a choice for a person to do nothing or to stab himself in the hand with a knife. The sane person, of course, does nothing, rather than stab himself in the hand with a knife. This is not a choice at all. People are presumed to act out of self-interest and to avoid harm to themselves. This is an assumption of law. "There is, in every man, an instinct of self-preservation which is ordinarily reflected in the exercise of due care and in the avoidance of danger." Klink v. Harrison, 332 F.2d 219, 228 (3d Cir. 1964), quoting Moore v. Esso Standard Oil Co., 72 A.2d 117, 120 (Pa. 1950). In the same way that a natural person is presumed to act in his own self-interest and to avoid harm, a corporation is assumed to act in its own self-interest and to avoid economic loss. Indeed, officers and directors of corporations have a fiduciary duty to act for the benefit and profit of the corporation. There is a presumption of law on this point.

4. THE PLAINTIFF IS ENTITLED TO THE PRESUMPTION THAT HIS FORMER EMPLOYER ACTED IN THE ONLY REASONABLE WAY POSSIBLE IN DISMISSING HIM FOR ECONOMIC REASONS; THIS PRESUMPTION ESTABLISHES CAUSATION

In its December 4, 2020 Order, this Court recited the proper standard of review for a motion to dismiss under Rule 12(b)(6). The Court noted it "must determine whether the factual allegations in the Second Amended Complaint, accepted as true, support a reasonable inference that Defendants are liable for the misconduct alleged. [citations omitted] The court must construe

the alleged facts in the light most favorable to Mr. Lawrence." Order, pp. 7-8. The Court recited the correct standard, but then failed to apply it.

The plaintiff alleged a fact—the defendants' executive orders were the proximate cause of the plaintiff's former employer closing down. The Court should have taken that assertion of fact as true. The Court did not. The Court concluded, based on the faulty reasoning of a Florida court, that the plaintiff's former employer closed by choice and not by necessity.

The plaintiff is entitled to every reasonable inference from the facts asserted in the complaint. The Court did not give the plaintiff a favorable inference to explain his former employer's response to the defendants' executive orders that made it impossible for restaurants to operate at a profit. This is error.

"It is not from the benevolence of the butcher, the brewer, or the baker that we expect our dinner, but from their regard to their own interest." This is an observation that Adam Smith made in his seminal economics treatise, The Wealth of Nations, (pub. 1776). Smith was completely on target in this assessment. Smith's observation has been cited with approval by multiple courts. See, e.g., Edwards v. District of Columbia, 755 F.3d 996, 1007 (D.C. Cir. 2014); Center for Auto Safety v. Peck, 751 F.2d 1336, 1352, fn. 11 (D.C. Cir. 1985); Kumpf v. Steinhaus, 779 F.2d 1323, 1326 (7th Cir. 1985); Amgen Inc. v. F. Hoffman-LaRoche Ltd., 581 F.Supp. 2d 160, 227 (D.Mass. 2008); Adams v. Sec'y of Health and Human Services, WL 2221852 2008, p. 1, fn. 4; Shulman v. Voyou, L.L.C., 251 F.Supp. 2d 166, 166 (D.D.C. 2003). The plaintiff is entitled to that presumption as an explanation of the plaintiff's former employer's response to the defendants' executive orders.

As the court noted in Amgen, Inc. v. F. Hoffman-LaRoche Ltd., 581 F.Supp. 2d 160, 227 (D.Mass. 2008), Amgen is not in the business of making drugs to save the lives of patients with life-threatening illnesses. Amgen develops pharmaceutical agents in order to make money. Amgen does not engage in altruism. The same is true for all businesses. The plaintiff's former employer did not do business to benefit its customers or its employees. It engaged in business to make money. Once the defendants made the profitable operation of the restaurant impossible, the closure of the restaurant was inevitable. There was no choice. The Florida court got it wrong in Henry v. DeSantis, 461 F.Supp. 3d 1244 (S.D. Fla. 2020). The plaintiff is entitled to the favorable inference that his former employer was in business to make money, and that it had no real choice but to close when the possibility of operating profitably was precluded by the defendants' ill-considered executive orders.

## 5. CONCLUSION

Dismissal of this case was improper. Dismissal was improper 1) because amendment of the complaint is possible in such a way that the amended complaint will state a claim upon which relief may be granted; 2) because the plaintiff asserted the fact that the defendants' conduct caused the plaintiff's former employer to close down as a business necessity, thereby establishing causation of damages and standing; and 3) because the plaintiff is entitled to every reasonable and favorable inference, including the inference that the plaintiff's former employer would act out of self-interest in response to the defendants' executive orders and thus would, without choice, close down.

WHEREFORE, the plaintiff respectfully requests that the Court set aside its December 4, 2020 Order of dismissal based on lack of standing, and for all such further relief as this Court deems just and proper.

DATED this 8th day of January, 2021

/s/ Michael Lawrence
Michael Lawrence, plaintiff
8330 E Quincy Ave, Apt H209
Denver, CO 80237
Tel. 720-231-2023
Email: mlawrence31416@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2021, a true and correct copy of the above was hand-delivered to the U.S. District Court for the U.S. District of Colorado and emailed to the defendants' counsel at their email address of record:

conor.farley@denvergov.org
mike.kotlarczyk@coag.gov
michael.mcmaster@coag.gov
fred.haines@coag.gov
wendy.shea@denvergov.org

/s/ Michael Lawrence

## CERTIFICATE OF COMPLIANCE WITH LENGTH REQUIREMENTS

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Michael Lawrence